UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re

CRUISE HOLDINGS II, LLC,[1]

      Debtor.

Case No. 06-16353-BKC-PGH

Chapter 11

**CHAPTER 11 TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING PRIVATE SALE OF THE *M/V BIG EASY,*FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND SHORTENING NOTICE OF SALE HEARING PURSUANT TO RULE 2002(a)**

*Hearing Respectfully Requested on Mon., February 8, 2010 at 1:30 p.m.* (the "Sale Hearing")

**STATEMENT PURSUANT TO LOCAL RULE 9075-1:**

**The Chapter 11 Trustee was prepared to abandon the M/V Big Easy (the "Vessel") because the bankruptcy estate does not have sufficient funds on hand to pay the Vessel's ongoing maintenance expenses. On the eve of the hearing to abandon the Vessel, the Chapter 11 Trustee received a binding offer to purchase the Vessel pursuant to a private sale, which the Chapter 11 Trustee is wiling to accept, subject to Court approval. A hearing to approve the sale on an emergency basis is required because, until the sale of the Vessel is approved, the Chapter 11 Trustee is unable to access the cash portion of the deposit paid by the proposed buyer, which are funds needed to maintain the Vessel pending a sale. Accordingly, the Chapter 11 Trustee seeks authorization on an expedited basis to consummate a private sale on the terms set forth herein and in the APA (as defined herein).**

      Mark T. Calvert, as Chapter 11 Trustee (the "Chapter 11 Trustee") for the estate of

Cruise Holdings II, LLC ("Cruise II"), through undersigned counsel, pursuant to 11 U.S.C. §§

105(a), 363(b) and (f), 1146(c) and Federal Rules of Bankruptcy Procedure 2002(a) and (c),

6004 and 9014, hereby requests the entry of an Order Authorizing the Private Sale of the *M/V*

---

[1] This case was previously jointly administered with the case of ITG Vegas, Inc., case no. 06-16350-PGH. Please see paragraphs 3 and 4 for additional details.

*Big Easy* (the "*Big Easy*" or the "Vessel") Free and Clear of Liens, Claims and Encumbrances and Shortening Notice of the Sale Hearing Pursuant to Federal Rule of Bankruptcy Procedure 2002(a) (the "Motion").  In support thereof, the Chapter 11 Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.        By this Motion, the Chapter 11 Trustee respectfully requests court approval of a private sale of the *Big Easy* to Rotate Black, Inc., a Nevada corporation (or an affiliate thereof) ("Buyer"), pursuant to the terms set forth in the Asset Purchase Agreement (the "APA") annexed hereto as **Exhibit "A**."

2.        The Chapter 11 Trustee has extensively marketed the Vessel for sale and respectfully submits that an auction process will be costly and will not result in any incremental benefit to the Debtor's estate.  The Chapter 11 Trustee has engaged a broker to market the Vessel worldwide for over 30 months and has had numerous discussions with various interested parties seeking to deploy the Vessel in such far away places as Singapore, Aruba, Brazil, and Costa Rica and as close as Mississippi.  In addition, the Chapter 11 Trustee has twice before filed bidding procedures motions in order to launch competitive sales processes in an effort to bring interested parties to the table.  These interested parties, however, were unwilling or unable to proceed to make a concrete offer until the Chapter 11 Trustee moved to abandon the estate's interest in the Vessel.

3.        The Chapter 11 Trustee has received and accepted, subject to Bankruptcy Court approval, an offer from Buyer to purchase the *Big Easy* for the sum of $3,000,000.  This offer is binding and backed by a $250,000 deposit consisting of $125,000 in cash and an additional $125,000 promissory note from Buyer that is personally guaranteed by John Paulsen, the Buyer's

Chairman of the Board and CEO.  Upon approval of this Motion, the Chapter 11 Trustee may immediately deploy the cash portion of this deposit to fund administrative expenses such as moorage, payroll, and professional fees.

4.      In light of the prior extensive marketing of the Vessel in this case, the Chapter 11 Trustee does not believe that any potential benefit that may be derived from a third competitive sales process will outweigh the costs to Cruise II's estate of embarking on such a process.  To the contrary, absent the cash portion of the deposit that will be made available by the Buyer pursuant to the APA to maintain the Vessel and cover administrative expenses pending the Buyer's anticipated purchase of the Vessel, the Chapter 11 Trustee would be left with insufficient funds to maintain the Vessel and therefore compelled to abandon Cruise II's interest in the *Big Easy*. *See Emergency Motion of Chapter 11 Trustee Mark Calvert to Abandon the Debtors' Estates' Interests in M/V Big Easy* [Case No. 06-16350, Dkt. No. 1793].  Accordingly, the Chapter 11 Trustee seeks authorization to sell the Vessel to the Buyer on the terms set forth herein and in the APA.

5.      The Chapter 11 Trustee submits that approval of the sale described is in the best interests of Cruise II's estate and its creditors.  Indeed, the Chapter 11 Trustee believes that absent approval of the relief sought herein, he will be forced to abandon the estate's interest in the Vessel to the severe detriment of all parties in interest.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this Motion pursuant to 28 U S.C. § 1334(b) and 157(b)(1).

7.       This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

### BACKGROUND

9.      On December 4, 2006 (the "Petition Date"), ITG Vegas, Inc. ("ITG Vegas") and its debtor affiliates ITG Palm Beach, LLC ("ITG Palm Beach"), Cruise Holdings I, LLC ("Cruise I"), Cruise II, Royal Star Entertainment, LLC ("RSE"), Riviera Beach Entertainment, LLC ("Riviera Beach"), Orion Casino Corporation ("Orion"), International Thoroughbred Gaming Development Corporation ("ITGDC"), Palm Beach Empress, Inc. ("PBE"), Palm Beach Maritime Corporation ("PBM"), and International Thoroughbred Breeders, Inc. ("ITB") (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code except for PBM and PBE, which filed their respective voluntary chapter 11 petitions on December 6, 2006, and ITB, which filed its voluntary chapter 11 petition on December 7, 2006.

10.     Pursuant to an Order issued December 6, 2006, this Court approved the joint administration of the Debtors' chapter 11 cases for procedural purposes only and designated case no. 06-16350-PGH as the lead case, pursuant to Federal Rule of Bankruptcy Procedure 1015(b). On July 27, 2007, the United States Trustee appointed Mark T. Calvert as Chapter 11 Trustee of the estates of each of the Debtors.

11.     The Chapter 11 Trustee, on behalf of the Debtors, entered into that certain Settlement Stipulation dated as of December 7, 2009 by and between Mark T. Calvert, as Chapter 11 Trustee for the estates of ITG Vegas, Inc., et al. and Francis W. Murray, Francis X. Murray, Scott Kaplan, Jerry Winters, Robert T. Quigley, James Murray, Walter T. Redavid, and William Warner (the "Stipulation"), which was modified and approved by the *Order Granting Motion of Chapter 11 Trustee Mark Calvert Pursuant to Fed. R. Bankr. P. 9019 to Approve*

*Settlement and Compromise with Former Officers and/or Directors of the Debtor and Related Relief* [Case No. 06-16350 Dkt. No. 1772] (the "<u>Settlement Order</u>").

12.    Pursuant to the Stipulation and the Settlement Order, the valuable assets of the Debtors' estates not already held by Cruise II, including the Maritime Lien Reserve (as defined in paragraph 15 hereof), were transferred to the estate of Cruise II; the Debtors other than Cruise II were restored to possession of their respective bankruptcy estates; the appointment of the Chapter 11 Trustee was terminated in respect of each of the Debtors other than Cruise II; and the bankruptcy case of Cruise II was procedurally severed from the jointly administered cases of the other Debtors [Dkt. No. 51].  Pursuant to the Settlement Order, the Chapter 11 Trustee continues to administer the remaining assets which were owned by the Debtors as of the date of the Settlement Order in the Cruise II bankruptcy estate, and all orders entered in the case 06-16350-PGH prior to January 29, 2010 remain effective as to Cruise II except to the extent any such order expressly otherwise provides.

## SUMMARY OF PROPOSED PRIVATE SALE TRANSACTION

13.    The Chapter 11 Trustee is now seeking authority to consummate a sale of the Assets to Buyer pursuant to the terms set forth in the APA, without conducting any further competitive bidding and without the need for further Court authorization.  Pursuant to Local Rule 6004-1(b), the material terms of the APA are summarized below.  This summary <u>is provided as a summary only</u> and the terms of the APA shall be determinative for all purposes, including the determination of the Assets to be sold to the Buyer.

### A.    Assets to be Sold to Buyer

14.    The sole asset to be sold pursuant to the APA is the *Big Easy*.  The *Big Easy* is a vessel registered in the Bahamas with a passenger capacity of approximately 1,000 persons,

40,000 square feet of public space as presently configured, length of 71.82 meters, a beam of 20 meters, and a gross tonnage of 4,178.

15.     The remaining assets of Cruise II other than the *Big Easy* shall be excluded from the proposed sale.  These remaining assets consist of the claims and judgment against Joseph Del Valle and the Maritime Lien Reserve that was established in respect of proceeds of the sale of the *M/V Palm Beach Princess*.  Notwithstanding the description above, which is provided as a summary only, the terms of the APA shall be determinative for all purposes.

### B.     The Buyer

16.     The Buyer is a Nevada corporation and neither the Buyer nor its principals are insiders of any of the Debtors.

### C.     Material Terms

- **Purchase Price**: The aggregate purchase price (the "Purchase Price") is in the amount of Three Million Dollars ($3,000,000) cash.

- **Closing Date**:  The closing of the transaction contemplated by the APA (the "Closing") shall take on or before March 15, 2010, provided that the Buyer may elect to defer the closing for up to a single 30 day period, but in no event later than April 14, 2010, by the payment to Seller of an additional $50,000 on or before March 15, 2010.

- **Deposit**:      A deposit in the amount of $250,000 was delivered to counsel for the Chapter 11 Trustee by Tuesday, February 2, 2010, consisting of (a) $125,000 cash, and (b) a promissory note made by Buyer in favor of the Chapter 11 Trustee in the original principal amount of $125,000 with a maturity date of March 15, 2010, but subject to up to a single 30 day extension to no later than April 14, 2010 in the event that Buyer elects to defer the closing as set forth in the immediately preceding paragraph.  The deposit is non-refundable, except under certain limited circumstances set forth in the APA.

- **Commission**:  Upon closing of a sale of the Vessel to Buyer, Luxury Yachts International, Inc. shall be entitled to a commission of $100,000, which commission shall be paid as a transaction cost from the proceeds of sale without further order of the Court.  In the event that Buyer fails to close and the deposit is forfeited under the terms of the APA, Luxury

Yachts International, Inc. shall be entitled to $50,000 to be paid from the forfeited deposit.

- **Representations and Warranties**: The Vessel will be sold "as is, where is" without and representations or warranties of any kind.

- **363(b) Requirements Regarding Personally Identifiable Information** Such requirements are not applicable

- **Consumer Privacy Ombudsman** – Not Required

- **Lien Holders** (a) PDS Gaming Corporation, through its attorney-in-fact PDS Funding 2004-A, LLC ("PDS-A"), and (b) holders of maritime liens encumbering the *Big Easy* (as to the *Big Easy* only and not the other Assets). This shall not operate as a waiver of the Chapter 11 Trustee's rights to contest the asserted liens or claims of any party asserting a maritime lien claim whatsoever.

- **Requested Sale Hearing Date: February 8, 2010** (the "Sale Hearing")

**C.    Notice of Proposed Sale**

17.    Federal Rule of Bankruptcy Procedure 6004(a) provides that notice of a proposed sale of property, other than in the ordinary course of business, shall be given to all known creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(2) and (c). *In re Performance Materials, Inc.*, 309 B.R. 819, 823 (Bankr. M.D. Fla. 2004).

18.    Federal Rule of Bankruptcy Procedure 2002(a)(2) provides that not less than twenty (20) days' notice by mail shall be given of a proposed sale of property other than in the ordinary course of business unless the Court, for cause shown, shortens the time or directs another method of giving notice. Federal Rule of Bankruptcy Procedure 2002(c)(1) governs the contents of the notice of a proposed sale and requires that the notice include, *inter alia*, the time and place of any sale and a general description of the property to be sold.

19.    In accordance with Local Rule 6004-1(A), the Chapter 11 Trustee intends to serve this Motion (including the summary of the terms and conditions of the proposed sale set forth

therein)[2] and any notice of Sale Hearing issued by the Court via First Class U.S. Mail, immediately upon filing upon the following parties:

    (a)    All entities known to have asserted a secured claim against the Vessel or against the Debtors' Estates;

    (b)    The United States Trustee's Office; and

    (c)    All parties that have requested notice pursuant to Bankruptcy Rule 2002 or who appear on the Master Service List established in case no. 06-16350 pursuant to Local Rule 2002-1(H).

20.    The Chapter 11 Trustee submits that because (i) of the extensive marketing efforts already undertaken by the Chapter 11 Trustee as set forth in further detail above, (ii) PDS-A (the Debtors' primary secured lender) is aware of the proposed sale and does not oppose the relief sought herein, (iii) the proceeds of the sale of the Vessel are not projected to exceed the amount of PDS-A's secured claim, and (iv) net proceeds of the sale shall be subject to any valid, enforceable liens including any valid, enforceable senior maritime liens against the Vessel (including the maritime lien granted to the Port of Palm Beach District pursuant to the *Order Approving Settlement with Port of Palm Beach and Mark T. Calvert, Trustee in Bankruptcy for ITG Vegas, Inc.* (Case No, 06-16350, Dkt. No. 938)), the Chapter 11 Trustee believes that the foregoing notice is sufficient to provide effective notice of the proposed sale to all parties in interest.

21.    Accordingly, the Chapter 11 Trustee requests that the Court find that cause exists to hear this Motion on shortened notice because approval of the proposed sale is necessary in order to allow the Chapter 11 Trustee to utilize the cash portion of the deposit to pay moorage, payroll, and other administrative expenses. Without prompt approval and access to the funds on

---

[2] In order to reduce costs to the Debtors' estates, the Chapter 11 Trustee does not intend to serve the APA because it is voluminous. Instead, the Chapter 11 Trustee shall make the APA available electronically upon request made to the Chapter 11 Trustee or to undersigned counsel.

deposit, there are insufficient funds to cover administrative expenses for the full 20-day notice period provided for by Federal Rule of Bankruptcy Procedure 2002(a).  Further, the Chapter 11 Trustee requests that the Court find that service of this Motion and the Notice of Sale Hearing constitute good and sufficient notice to creditors and parties in interest, and that no further notice of the proposed sale or the Sale Hearing is required.

> **D.    Legal Standard for Sale of the *Big Easy***

22.    Section 363(b)(1) states that the "trustee, after notice and a hearing, may use, sell, or lease, other <u>than</u> in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts usually defer to the business judgment of a trustee in deciding whether or not to authorize the trustee to sell property outside the ordinary course of business.  *See, e.g.*, *In re Lorraine Brooke Associates, Inc.*, 07-12641-AJC, 2007 WL 2257608, at \*4 (Bankr. S.D. Fla. Aug. 2, 2007) (*citing In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 653 (S.D.N.Y. 1995); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("[g]reat judicial deference is given to the Trustee's exercise of business judgment"); *see also In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).  In considering whether a trustee is justified in selling assets outside the ordinary course of business, courts consider four factors: (a) whether a sound business reason or emergency justifies a pre-confirmation sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale has been proposed in good faith; and (d) whether the purchase price is fair and reasonable.  *See In re Gulf States Steel, Inc. of Ala.,* 285 B.R. at 514.

23.    Sound business reasons exist for selling the Vessel and for doing so at this time. As stated above, the Chapter 11 Trustee has engaged in extensive marketing efforts in an attempt to locate a suitable purchaser for the Vessel and to obtain the best value therefor.  In so doing,

the Chapter 11 Trustee has concluded that the sale of the Vessel at this time will likely yield as much value for the Vessel as is possible under the circumstances.

24.     The Chapter 11 Trustee seeks authorization to sell the Vessel pursuant to the terms of the APA as described above.  Although the Chapter 11 Trustee previously hoped to obtain an amount significantly greater than the Purchase Price for the Vessel, the extensive sale processes conducted to date have revealed that no buyer is both willing and financially able to purchase the Vessel in a reasonable time period on more favorable terms than those set forth in the APA.  Accordingly, the Chapter 11 Trustee believes that the Purchase Price is fair and reasonable under the circumstances.

25.     The sale of the *Big Easy* has been proposed in good faith and is within the Chapter 11 Trustee's reasonable business judgment.  Pursuant to § 105(a) and 363(f) of the Bankruptcy Code, the Chapter 11 Trustee requests that, upon the Closing pursuant to the APA, the Vessel shall be transferred, sold, and delivered free and clear of all mortgages, security interests, conditional sale and/or title retention agreements, pledges, maritime and all other liens, judgments, demands, encumbrances, easements, restrictions, constructive or resulting trusts, or charges of any kind or nature, including, but not limited to, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership (collectively, the "Liens") and all debts arising in any way in connection with any acts of the Debtors, claims (as that term is defined in § 101(5) of the Bankruptcy Code), obligations, demands, guarantees, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, arising prior to the Closing Date (as defined in the APA) or relating to acts occurring prior to the Closing Date, and whether imposed by agreement, understanding, law or equity, or otherwise (collectively, the "Claims") with all such Liens and Claims to attach to the net

10

proceeds of the sale of the Vessel in the order of their priority, with the validity, force and effect that they now have, if any, against the Vessel, subject to the rights, claims, defenses, and objections, if any of the Debtors, the Chapter 11 Trustee and all interested parties with respect to such Liens and Claims.

26.     Pursuant to § 363(f) of the Bankruptcy Code, a trustee may sell property under 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions are satisfied: (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (ii) such entity consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

27.     Here, even if any alleged lienholder does not consent to the proposed sale to Rotate Black, the Chapter 11 Trustee may nevertheless sell the Vessel free and clear of liens because, with respect to each such lienholder, one or more of the prongs of § 363(f) can be satisfied.  Specifically, the alternative to the sale proposed herein is abandonment of Cruise II's interest in the Vessel, likely followed by arrest of the Vessel and a sale conducted under the authority of the District Court in admiralty.  This sale would be free and clear of liens with the liens to attach to proceeds of the sale under maritime law, thus satisfying § 363(f)(1).  Similarly, because the alleged liens against the Vessel consist of the ship's mortgage and claims for maritime torts and necessaries, these claims could be satisfied by the payment of money from the proceeds of the Vessel after an admiralty sale and thus § 363(f)(5) is also satisfied.  Finally, many of the alleged liens against the Vessel are disputed claims and therefore implicate § 363(f)(4) as well.

28.     Accordingly, the purchase of the Vessel should, pursuant to § 105(a) of the Bankruptcy Code, be expressly free and clear of any and all administrative expense Claims, priority Claims, secured Claims against property of the Debtors not being purchased under the contemplated sale, and unsecured Claims that arose, existed, or accrued prior to the Closing, whether direct or indirect, fixed or contingent, choate or inchoate, matured or unmatured, liquidated or unliquidated, or voluntarily incurred or arising by operation of law, including, without limitation, any Claims based on theories of successor liability, with any such secured claims to attach to the proceeds of sale.

29.     The Chapter 11 Trustee respectfully submits that the Buyer of the Vessel will not, after the Closing, constitute a successor to any of the Debtors.  The ultimate purchaser will not be responsible for the satisfaction of any Claims or Liens against the Estates.  Accordingly, pursuant to §§ 105(a) and 363(f) of the Bankruptcy Code, the Vessel should be sold free and clear of all Liens and Claims, with all such Liens and Claims to be satisfied solely out of the proceeds of the sale.

## CONCLUSION

WHEREFORE, the Chapter 11 Trustee respectfully requests entry of an order (i) authorizing the Chapter 11 Trustee to sell the Vessel to Rotate Black on substantially the terms set forth in the APA and free and clear of liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the proceeds of the sale of the Vessel in the order of their priority, with the validity, force and effect that they now have, if any, against the Vessel, subject to the rights, claims, defenses, and objections, if any of Cruise II, the Chapter 11 Trustee and all interested parties with respect to such Liens and Claims; (ii) shortening the notice of the Sale

12

Hearing for cause pursuant to Federal Rule of Bankruptcy Procedure 2002(a); and (iii) granting

such other and further relief as is just and proper.

      Dated:  February 3, 2010

                                    Respectfully submitted,

                                    **I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).**

                                    BILZIN  SUMBERG  BAENA  PRICE  & AXELROD LLP
*Attorneys for Chapter 11 Trustee*
200 South Biscayne Boulevard, Suite 2500
Miami, Florida  33131
Telephone:  (305) 374-7580
Facsimile:  (305) 374-7593

                                    By: /s/ Mindy A. Mora
                                        Mindy A. Mora
                                        Florida Bar No. 678910
                                        Jeffrey I. Snyder
                                        Florida Bar No. 021281

**<u>EXHIBIT "A"</u>**

# OFFER TO PURCHASE

### LUXURY YACHTS INTERNATIONAL, INC. IS HEREBY AUTHORIZED
### TO OFFER THE SUM OF
## $ 3,000,000.00 (GROSS)
### Three Million and No/100 Dollars (US Funds)
### FOR THE VESSEL: "BIG EASY" (see Specifications Schedule A)
### OFFICIAL NUMBER: USCG DOC # 998517   YEAR: 1993
### GENERAL DESCRIPTION/TYPE: 226' 1200 Passenger

**THE BUYER: Rotate Black, Inc. and/or Assigns submits the following offer on behalf of an entity to be formed**
**The SELLER: Mark Calvert, chapter 11 Trustee of Cruise Holding II, LLC**

The Buyer agrees and understands and submits this offer as follows:

1. Understands that the BIG EASY (the "vessel") is offered in good faith subject to the Seller's acceptance of this offer subject to the approval of this offer by the US Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") and that said offer is binding on Seller only when accepted in writing by the Seller, and an order is entered by the Bankruptcy Court authorizing the Seller to sell the vessel to the Buyer. This offer is tendered with the understanding that it will remain irrevocable upon delivery of the full $250,000 deposit described below. The $250,000 deposit shall be non-refundable, unless the Bankruptcy Court fails to authorize the Seller to sell the vessel to the Buyer.

**The deadline for Buyer to deliver its $250,000 deposit to Seller shall be, as follows:  (a) the sum of $125,000 by wire transfer to Seller's counsel by no later than 4:00 p.m. on Tuesday, February 2, 2010, (b) the sum of $125,000, to be evidenced through the delivery by no later than 4:00 p.m. on Tuesday, February 2, 2010 of a promissory note in the amount of $125,000 made by Buyer in favor of Seller and personally guaranteed by John Paulsen, individually, in the form attached, and by the payment of the sum of $125,000 in immediately available funds to the BSBPA Trust Account (as defined below) on or before March 15, 2010.**

Upon Seller's receipt of the $250,000 Buyer's deposit, Seller will seek expedited Bankruptcy Court approval of the sale of the vessel to Buyer at a hearing to be conducted by the Bankruptcy Court in Case No. 06-16353 (the "Sale Hearing"). Upon approval of the sale of the vessel to Buyer at the Sale Hearing, Seller may use the deposit for any purpose authorized by the Bankruptcy Code and the Bankruptcy Court.

2. Understands that the Buyer and his guest(s) will board the vessels for Survey at their own risk and will hold this brokerage and the owner(s) harmless and free from any and all claims of injury or damage which may occur to them, and that the Buyer hereby assumes the responsibility of notifying his guest(s) of this condition.

3. Agrees that the Buyer shall pay for all engine inspections, Haul-Outs, Surveys and miscellaneous services authorized by the Buyer whether the Buyer purchases the vessel or not. Buyer shall also be liable for all repairs that the Buyer orders to be made even if for any reason he is unable to complete this transaction. Buyer shall have the right to appoint the surveyor of his choice. **Notwithstanding the forgoing, the Buyer shall not order any repairs**

15

**of the vessel unless and until the Buyer closes on the sale of the vessel pursuant to an order of the Bankruptcy Court.**

4.    Buyer    acknowledges    that    no    Sea    Trial    of    the    vessel    is    possible    at    this    time.

## PAGE 2 OFFER TO PURCHASE VESSEL. "BIG EASY"
## OFFICIAL NUMBERS: USCG DOC# 998517

5.  Knows of and agrees to pay STATE USE TAX, when due, to Dept. of Revenue for the state of Florida, if applicable.

6.  Knows of and agrees to pay his prorated share of property taxes, computed from the date of the sale to the first of January of the following year, if applicable.

7.  Understands that in the event the Buyer delivers its deposit and thereafter fails to pay the balance of the purchase price, Buyer agrees that the Seller may retain any deposit as liquidated damages for the Buyer's breach of this agreement.

**The Buyer will give his final acceptance of the vessel by delivery of its deposit as described in paragraph 1 above, and therefore the deposit will be non-refundable immediately, if the Buyer fails to close after the conditions listed in paragraph 1 are met.**

8.  This document constitutes the offer from the Buyer to the Seller. Upon acceptance by Seller, this offer shall be deemed an "Asset Purchase Agreement" and shall be filed with an appropriate motion with the Bankruptcy Court. There are no other duties, obligations, liabilities, or warranties, implied or otherwise. All agreements or representations not incorporated in this writing are void and have no effect. This offer can only be modified by a written modification agreed to, accepted and signed by SELLER, BUYER and Luxury Yachts International, Inc.

9.  Should any dispute arise between Buyer and Seller and Luxury Yachts International, Inc., the parties shall be bound by the decisions of the Bankruptcy Court.

10. **OTHER CONDITIONS:**
        Method of payment: $250,000.00 Deposit wire transferred to the trust account of Seller's counsel, Bilzin Sumberg Baena Price & Axelrod LLP ("BSBPA Trust Account") as follows: (a) the sum of $125,000 by wire transfer to BSBPA Trust Account by no later than Tuesday, February 2, 2010; (b) the sum of $125,000, to be evidenced through the delivery to Seller's counsel by no later than 4:00 p.m. on Tuesday, February 2, 2010 of a promissory note in the amount of $125,000 made by Buyer in favor of Seller and personally guaranteed by John Paulsen, individually, in the form attached, and by the payment of the sum of $125,000 in immediately available funds to BSBPA Trust Account on or before March 15, 2010; and (d) at closing the balance of $2,750,000 by Certified Check or wire transfer of immediately available funds delivered to BSBPA Trust Account.

        This offer shall remain open until January 28, 2010 10:00 P.M. (EST).

**FINAL CLOSING:** shall take place on or before March 15, 2010 5:00 P.M. Eastern Standard Time. Buyer may elect to defer the closing for up to a single 30 day period, but in no event later than April 14, 2010, by the payment to Seller of an additional $50,000, payable by wire transfer to BSBPA Trust Account, on or before March 15, 2010.

The Buyer hereby certifies that it has read and approved this offer and acknowledges receiving a copy of this agreement.

## PAGE 3 OFFER TO PURCHASE FOR VESSEL
## "BIG EASY" OFFICIAL NUMBERS: USCG DOC# 998517

11. **Other Conditions:** THE VESSEL IS BEING SOLD "AS IS, WHERE IS". Buyer understands and agrees that entry of an order by the Bankruptcy Court approving the sale of the vessel is required in order for the sale to be final; pending the entry of such order, the deposit referenced above will be held in the BSBPA Trust Account. At least two business days prior to closing, Seller will provide Buyer with a copy of the order of the Bankruptcy Court authorizing the sale of the vessel to Buyer, free and clear of all liens, claims and encumbrances, which liens, claims and encumbrances shall attach to the proceeds of sale of the vessel.

12. This Offer is tendered with the intention of the Buyer as becoming recognized, after the delivery of its deposit, as the purchaser of the Vessel pursuant to an order entered by the Bankruptcy Court with respect to the sale of the vessel, and, notwithstanding anything to the contrary set forth herein, (a) is not contingent upon (i) financing, (ii) the completion of unperformed Due Diligence, (iii) the obtaining of approvals from the Buyer's board of directors or other internal approvals or consents, or (iv) the absence of any material adverse change; (b) is subject to approval by the Bankruptcy Court; (c) provides for a final closing no later than March 15, 2010, subject to a single extension of no more than 30 days but in no event later than April 14, 2010, at the election of Buyer, but subject to the payment to Seller of an additional $50,000, payable by wire transfer to BSBPA Trust Account on or before March 15, 2010; (d) is irrevocable upon delivery of Buyer's deposit and as set forth in paragraph 1; and (e) provides for a $250,000 deposit which deposit shall be non-refundable upon delivery and that shall be forfeited as liquidated damages in the event that the Buyer defaults, breaches the terms of this Offer, or breaches the terms of any sale order that may be entered by the Bankruptcy Court.

13. We have read and understand the terms and conditions concerning the sale and purchases of the above described "BIG EASY" OFFICIAL#: USCG DOC# 998517, and hereby approve and accept the terms hereof and acknowledge receipt of a copy of this Agreement.

Buyer's Signature:

Print Name ROTATE BLACK, INC., John Paulsen, Pres. CEO           Date: 1/28/09

Address: 932 Spring Street Suite #201, Petoskey, Michigan 49770

Luxury Yachts International, Inc.:
Selling Agent:          Linda L. Krantz, President           Date: 1/28/09

                                                             License #: EBK-4321

## PAGE 4 OFFER TO PURCHASE FOR VESSEL
## "BIG EASY" OFFICIAL NUMBERS: USCG DOC# 998517

### THE SELLER:  MARK CALVERT, Chapter 11 Trustee for Cruise Holding II LLC

1. Seller agrees that this offer is tendered with the understanding that it may not be considered binding until delivery of Buyer's deposit.

2. In the event Buyer's deposit is forfeited under the terms of this agreement, said deposit shall be divided between the Seller and Luxury Yachts International, Inc. with the sum of $200,000 being retained by Seller and the Brokerage share shall be in the amount of $50,000.

3.  Seller is to discharge all liens, mortgages and bills now held against the vessel and shall furnish clear title to the vessel in accordance with the regulations of the U.S. Customs, State of Florida, Department of Harbors and Watercraft, and the applicable tax departments of the City, County, State and Federal governments. **The Seller shall deliver clean title to the vessel, free and clear of all liens, claims and encumbrances, as a result of the Bankruptcy Court order authorizing the sale of the vessel on such terms.  Any existing liens, claims or encumbrances against the vessel shall attach to the proceeds of the sale.**

4. This document constitutes the entire offer between the parties.  There are no other duties, obligations, liabilities, or warranties, implied or otherwise.  All agreements or representations not incorporated in this writing are void and have no effect.  This Agreement can only be modified by written modification agreed to, accepted and signed by SELLER, BUYER and LUXURY YACHTS INTERNATIONAL, INC.

**5.  Other Conditions:  In the event the vessel is sold to Buyer, Seller shall be under obligation for the payment of $100,000 commission to Luxury Yachts International, Inc., and shall be paid from the proceeds of the sale upon closing.**

**6.  Binding Offer:  Seller accepts this offer only to evidence terms and price and Seller's intent to submit same to the Bankruptcy Court for approval.  This offer shall be immediately binding on Buyer.  Buyer may not withdraw this offer for any reason after the delivery of this offer to Seller.**

**In the event the Bankruptcy Court does not approve this offer, Buyer shall be entitled to a prompt 100% refund of any deposits held in the BSBPA trust account, and Seller shall have no obligation or liability for the payment of any commission to Luxury Yachts International, Inc.**

01/29/2010 08:46 FAX                                                    @006/007

## PAGE 5 OFFER TO PURCHASE FOR VESSEL
## "BIG EASY" OFFICIAL NUMBERS: USCG DOC# 998517

6. I, the Seller, subject to **Bankruptcy Court Approval,** hereby certify that I have read and approved this agreement and further agree to perform the obligations of the Seller as stated above within the time period provided. I further acknowledge receipt of a copy of this Agreement.

Seller's Signature: _____   Date:_____

Print Name: MARK CALVERT, Trustee for Cruise Holdings II LLC

Seller's Signature: _____   Date:_____

    Print Name:

Address: c/o Bilzin Sumberg Baena Price & Axelrod, LLP, 200 S. Biscayne Blvd., Suite 2500, Miami, Florida 33131

Luxury Yachts International, Inc.: _____ Date: Jan 29, 2010
    Selling Agent:    Linda L. Krantz, President    License Number: # EBK-4321

Luxury Yachts International, Inc.: _____ Date: Jan. 29, 2010
    Linda L. Krantz, President
    Broker of Record: #EBK-4321

## PAGE 5 OFFER TO PURCHASE FOR VESSEL
## "BIG EASY" OFFICIAL NUMBERS: USCG DOC# 998517

6.  I, the Seller, subject to **Bankruptcy Court Approval,** hereby certify that I have read and approved this agreement and further agree to perform the obligations of the Seller as stated above within the time period provided. I further acknowledge receipt of a copy of this Agreement.

Seller's Signature: _____   Date: __1 / 27 / 2010__
Print Name: MARK CALVERT, Trustee for Cruise Holdings II LLC

Seller's Signature: ____MARK CALVERT____   Date: __1 / 27 / 2010__
Print Name:

**Address: c/o Bilzin Sumberg Baena Price & Axelrod, LLP, 200 S. Biscayne Blvd., Suite 2500, Miami, Florida 33131**

Luxury Yachts International, Inc.: _____   Date:_____
    Selling Agent:             Linda L. Krantz, President    License Number: # EBK-4321

Luxury Yachts International, Inc.: _____   Date:_____
                         Linda L. Krantz, President
                         Broker of Record: #EBK-4321

[Insert form of promissory note]

# PROMISSORY NOTE

$125,000.00                                                    January 28, 2010

FOR VALUE RECEIVED, Rotate Black, Inc. ("Maker"), hereby promises and agrees to pay to the order of Mark T. Calvert, as Chapter 11 Trustee for the estate of Cruise Holdings II, LLC ("Trustee"; Trustee and each and all subsequent holders of this Note are included in the term "Holder"), in the manner set forth herein, in legal tender of the United States of America, the principal sum of One Hundred Twenty Five Thousand Dollars ($125,000.00), on or before the Maturity Date, as defined herein.

All principal, interest and unpaid costs hereon shall be due and payable on the earlier of (such earlier date, the "Maturity Date").

(a)    March 15, 2010, or

(b)    the acceleration of the outstanding balance of this Note pursuant to the terms set forth herein Principal may be prepaid at any time in whole or in part, without premium or penalty.

Any of the following shall constitute an event of default (each an "Event of Default"):

(a)    Any failure by Maker to make payment of principal or interest when due;

(b)    Any failure by Maker to make any payment set forth in that certain Offer to Purchase the vessel M/V Big Easy for a gross purchase price of Three Million Dollars ($3,000,000) dated as of January 28, 2010 (the "Asset Purchase Agreement"), pursuant to the terms thereof;

(c)    The Maker shall: (i) make an assignment for the benefit of creditors, file a petition in bankruptcy, petition or apply to any tribunal for the appointment of a custodian, receiver or any trustee, or a substantial part of any of its properties or assets, or shall commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect; or if there shall have been filed any such petition or application, or any such proceeding shall have been commenced against the Maker in which an order for relief is entered or which remains undismissed for a period of thirty (30) days or more; or the Maker by any act or omission shall indicate its consent to, approval of or fail to timely object to any such petition, application or proceeding or order for relief or the appointment of a custodian, receiver, or any trustee for the Maker or any substantial part of any of its properties or assets, or shall suffer any such custodianship, receivership or trusteeship to continue undischarged for a period of thirty (30) days or more; (ii) generally not pay its debts as such debts become due without proper defenses or admit in writing its inability to pay its debts as they mature; or (iii) have concealed, removed or permitted to be concealed or removed any part of its properties or assets, with the intent to hinder, delay or defraud its creditors or any of them, or made or suffered a transfer of any of its property which may be determined by proper authority to be fraudulent under any bankruptcy, fraudulent conveyance or similar law; or shall have suffered or permitted while solvent,

-1-

any creditor to obtain a lien upon any of the property of the Maker through legal proceedings or distraint which is not vacated within thirty (30) days from the date thereof; or (iv) be "insolvent", as such term is defined in the United States Bankruptcy Code, § 11 U.S.C. § 101(31).

Upon the occurrence of an Event of Default, the Holder may, at any time, with or without written notice, take any or all of the following actions, at the same or different times (the right to take such actions shall be cumulative): (i) declare the outstanding balance of this Note to be forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived; provided, further that the outstanding balance of this Note shall automatically become due and payable upon the occurrence of an Event of Default under subparagraph (c) of the immediately preceding paragraph, (ii) take any and all actions and pursue any and all remedies when and as may be permitted by this Note, any other agreement between Maker and Seller, court order, or by applicable law (including, without limitation, all rights of banker's lien, counterclaim or set-off), and (iii) apply amounts received by the Holder in reduction of the outstanding balance of this Note in such order as the Holder may elect in his sole and absolute discretion.

Upon the occurrence and continuance of an Event of Default, and without limiting, constituting forbearance in respect of, or otherwise affecting the exercise of any other right or remedy the Holder may have, the then unpaid principal balance hereof shall, at the option of Holder, bear interest from the time of such default at a rate per annum of 6% (the "Default Rate"). In no event and under no circumstances shall there be due hereunder, nor shall Holder be entitled hereunder to receive at any time, any charges not allowed or permitted by law or any interest or interest rate in excess of the maximum allowed by law. In the event that the amount of any charge or payment due hereunder shall create or shall be deemed to create an interest charge in excess of the maximum permissible legal rate, then the charge of any such excess amount shall be deemed unenforceable and void and its collection shall be waived, without affecting the remainder of the obligations evidenced hereby, and any such excess amount which may have been paid to Holder shall be refunded.

Upon the occurrence and continuance of an Event of Default, Maker agrees and covenants to provide to Holder, immediately upon the occurrence of such Event of Default and prior to March 31 of each year during the continuance of such Event of Default, a copy of financial statements for the Maker for the calendar year ended on the immediately preceding December 31. Additionally, during the continuance of an Event of Default, Maker shall provide to Holder, prior to the 30th day of each calendar quarter, financial statements for the Maker for the immediately preceding quarter. Such financial statements shall be in such detail as Holder may reasonably require.

With respect to any and all obligations evidenced hereby, Maker severally waives the following: (1) notice of acceptance of this Note by the Holder; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Maker liable on any obligation; and (3) the right to interpose any non-compulsory set off or counterclaim of any nature or description in any litigation in which Holder and Maker shall be adverse parties. Maker agrees that any obligations of Maker evidenced hereunder may, from time to time, in whole or in part, be renewed, extended, modified, accelerated, compromised, discharged or

-2-

released by Holder, all without notice to or further reservations of rights against Maker and all without in any way affecting or releasing the liability of Maker. Maker agrees to pay all taxes and assessments levied on or with respect to the obligation evidenced hereunder and this Note, and all filing fees and all costs of collecting or securing or attempting to collect or secure any obligations hereunder, including attorneys' fees, whether or not involving litigation and/or appellate proceedings.

Holder shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by Holder. All rights and remedies of Holder under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Maker agrees that Holder shall be entitled to all the rights of a holder in due course of a negotiable instrument. Holder shall have the right unilaterally to correct patent errors in this Note and to fill in any blank spaces herein so as to conform to the terms upon which the Loan is being made.

Maker is liable for all obligations evidenced by this Note, and has subscribed its name hereto without condition that anyone else should sign or become bound hereon or thereon and without any other condition whatever being made. The provisions of this Note are binding on the administrators, assigns and successors of Maker and shall inure to the benefit of Holder, its successors and assigns.

Maker acknowledges and agrees that Holder may sell, assign, pledge, encumber, or otherwise transfer to any person all or any portion of its interest in this Note and the documents evidencing and securing the obligations hereunder, and that in connection with any such proposed transfer, Holder may disclose to the proposed purchaser any or all information in its files as to the obligations evidenced by this Note, and as to Maker.

Notwithstanding the foregoing, Maker shall have no liability hereunder and this Note shall be void and of no force or effect in the event that (a) the United States Bankruptcy Court for the Southern District of Florida (the "Court") does not authorize the Trustee to sell to Maker the M/V Big Easy pursuant to a final order; or (b) Maker fails to purchase the M/V Big Easy because of a default by the Trustee of his obligations under the Asset Purchase Agreement, which default occurs prior to any default by Maker of its obligations under the Asset Purchase Agreement.

Any modification of this Note which is not in writing and signed by Holder and Maker shall be void. Holder may rely on the information, instructions, or other communications given to Holder by Maker.

All notices and other communications under this Note shall be in writing.

Except where the laws of the United States are applicable (including, without limitation, any federal laws pertaining to maximum permitted rates of interest), this Note shall be governed by and construed under the laws of the State of Florida without application of its conflict of laws principles.

Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof. Maker acknowledges receipt of a completed copy of this Note.

All payments on this Note received after 2:00 P.M. Eastern Time on any business day shall be deemed received at the opening of the next business day.

Maker hereby agrees to pay to Holder, upon demand, all costs and expenses of every kind and description reasonably incurred by Holder in connection with the enforcement and protection (whether in connection with any appeal by Holder of any lower court proceeding or otherwise) of the rights of Holder hereunder or in any way related hereto, whether or not legal or equitable proceedings are actually commenced, including, without limitation, the reasonable fees and disbursements for Holder.

MAKER AND, BY ITS ACCEPTANCE HEREOF, HOLDER, EACH HEREBY WAIVES (1) ALL RIGHTS TO RELY ON OR ENFORCE ANY ORAL STATEMENTS MADE PRIOR TO, CONTEMPORANEOUSLY WITH OR SUBSEQUENT TO THE SIGNING OF THIS NOTE; AND (2) THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, OR WITH RESPECT TO DEALINGS BETWEEN HOLDER AND MAKER CONCERNING ANY COURSE OF CONDUCT, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR HOLDER TO PROVIDE CREDIT TO MAKER.

MAKER AND, BY ITS ACCEPTANCE HEREOF, HOLDER, AGREE, CONSENT, AND ACKNOWLEDGE THAT THE MANDATORY VENUE AND EXCLUSIVE JURISDICTION FOR ANY LEGAL PROCEEDING IN CONNECTION WITH THIS NOTE SHALL BE IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, WEST PALM BEACH DIVISION OR, SOLELY IN THE EVENT THAT SUCH COURT LACKS SUBJECT MATTER JURISDICTION, ANY COURT OF COMPETENT JURISDICTION IN PALM BEACH COUNTY, FLORIDA.

ROTATE BLACK, INC.

By: _____

Name: __Joan Paulson__

Title: __Ceo__

-4-

# UNCONDITIONAL GUARANTY

This **UNCONDITIONAL GUARANTY** (this "Guaranty"), dated as of January 28, 2009, is executed and delivered by John Paulsen, an individual ("Paulsen" or "Guarantor") in favor of Cruise Holdings II, LLC, by and through Mark T. Calvert (the "Chapter 11 Trustee"), the duly appointed Chapter 11 Trustee for the bankruptcy estate of Cruise Holdings II, LLC (the "Estate"), appointed by order of the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court"), under Case No. 06-16353-BKC-PGH, in light of the following:

**WHEREAS**, Rotate Black, Inc. ("Rotate Black") has made and delivered that certain Promissory Note in favor of the Chapter 11 Trustee in the original principal amount of $125,000 (the "Note") in connection with that certain Offer to Purchase the vessel M/V Big Easy for a gross purchase price of Three Million Dollars ($3,000,000) dated as of January 28, 2010 (the "Asset Purchase Agreement");

**WHEREAS**, in order to induce the Chapter 11 Trustee to accept the Asset Purchase Agreement and present same to the Bankruptcy Court, Guarantor has agreed to unconditionally and irrevocably guarantee the obligations of Rotate Black under the Note;

**NOW, THEREFORE**, in consideration of the foregoing, Guarantor hereby agrees as follows:

1.    <u>Guaranteed Obligations</u>.  Guarantor, jointly and severally, hereby irrevocably and unconditionally guarantees to the Chapter 11 Trustee, as and for its own debt, until final payment in full thereof has been made of any and all of Rotate Black's obligations, indebtedness, or liabilities of any kind or character arising in connection with the Note, when and as the same shall become due and payable; it being the intent of Guarantor that the guaranty set forth herein shall be a guaranty of payment and not a guaranty of collection.  Notwithstanding the foregoing and notwithstanding any other provision of this Guaranty, Guarantor shall have no liability hereunder and this Guaranty shall be void and of no force or effect in the event that (a) the United States Bankruptcy Court for the Southern District of Florida (the "Court") does not authorize the Trustee to sell to Rotate Black the M/V Big Easy pursuant to a final order; or (b) Rotate Black fails to purchase the M/V Big Easy because of a default by the Chapter 11 Trustee of his obligations under the Asset Purchase Agreement, which default occurs prior to any default by Rotate Black of its obligations under the Asset Purchase Agreement.  The foregoing, as qualified by the immediately preceding sentence, shall be referred to as the "Guaranteed Obligations".

2.    <u>Continuing Guaranty</u>.  This Guaranty includes Guaranteed Obligations arising under successive transactions continuing, compromising, extending, increasing, modifying, releasing, or renewing the Guaranteed Obligations, changing the interest rate, payment terms, or other terms and conditions thereof, or creating new or additional Guaranteed Obligations after prior Guaranteed Obligations have been satisfied in whole or in part.  To the maximum extent permitted by law, each Guarantor hereby waives any right to revoke this Guaranty.

3.    <u>Performance Under this Guaranty</u>.  In the event that Rotate Black fails to make any payment of any Guaranteed Obligations, on or prior to the due date thereof, in the manner provided in the Note, Guarantor immediately shall cause, as applicable, such payment to be made of the Guaranteed Obligations.

4.    <u>Primary Obligations</u>.  This Guaranty is a primary and original obligation of Guarantor, is not merely the creation of a surety relationship, and is an absolute, unconditional, and continuing guaranty of payment that remains in full force and effect without respect to future changes in conditions.  Guarantor hereby agrees that he is liable to the Chapter 11 Trustee, that the obligations of Guarantor hereunder are independent of the obligations of Rotate Black, and that a separate action may be brought against Guarantor, whether such action is brought against Rotate Black or whether Rotate Black is joined in such action.  Guarantor hereby agrees that his liability hereunder shall be immediate and shall not be contingent upon the exercise or enforcement by the Chapter 11 Trustee of whatever remedies it may have against Rotate Black,.  Guarantor hereby agrees that any release that may be given by the Chapter 11 Trustee to Rotate Black shall not release such Guarantor.  Guarantor consents and agrees that the Chapter 11 Trustee shall not be under any obligation to marshal any property or assets of Rotate Black in favor of Guarantor, or against or in payment of any or all of the Guaranteed Obligations.

5.    <u>Waivers</u>.

(a)    To the fullest extent permitted by applicable law, Guarantor hereby waives: (i) notice of acceptance hereof; (ii) notice of any loans or other financial accommodations made or extended under the Note, or the creation or existence of any Guaranteed Obligations; (iii) notice of the amount of the Guaranteed Obligations, subject, however, to Guarantor's right to make inquiry of the Chapter 11 Trustee to ascertain the amount of the Guaranteed Obligations at any reasonable time; (iv) notice of any adverse change in the financial condition of Rotate Black or of any other fact that might increase such Guarantor's risk hereunder; (v) notice of presentment for payment, demand, protest, and notice thereof as to the Note; (vi) notice of any Event of Default under the Note; and (vii) all other notices (except if such notice is specifically required to be given to Guarantor under this Guaranty) and demands to which Guarantor might otherwise be entitled.

(b)    To the fullest extent permitted by applicable law, Guarantor hereby waives the right by statute or otherwise to require the Chapter 11 Trustee to institute suit against Rotate Black or to exhaust any rights and remedies that the Chapter 11 Trustee has or may have against Rotate Black.  In this regard, Guarantor agrees that he is bound to the payment of each and all Guaranteed Obligations, whether now existing or hereafter arising, as fully as if the Guaranteed Obligations were directly owing to the Chapter 11 Trustee by Guarantor.  Guarantor further waives any defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations shall have been performed and paid in cash, to the extent of any such payment) of Rotate Black or by reason of the cessation from any cause whatsoever of the liability of Rotate Black in respect thereof.

(c)    To the fullest extent permitted by applicable law, Guarantor hereby waives: (i) any right to assert against the Chapter 11 Trustee any defense (legal or equitable), set-off, counterclaim, or claim that such Guarantor may now or at any time hereafter have against Rotate Black or any other party liable to the Chapter 11 Trustee; (ii) any defense, set-off,

<u>UNCONDITIONAL GUARANTY</u> – Page 2

counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Guaranteed Obligations or any security therefor; (iii) any right or defense arising by reason of any claim or defense based upon an election of remedies by the Chapter 11 Trustee; (iv) the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof, and any act that shall defer or delay the operation of any statute of limitations applicable to the Guaranteed Obligations shall similarly operate to defer or delay the operation of such statute of limitations applicable to Guarantor's liability hereunder.

(d)    Until such time as all of the Guaranteed Obligations have been finally paid or performed in full: (i) Guarantor hereby waives and postpones any right of subrogation such Guarantor has or may have against Rotate Black with respect to the Guaranteed Obligations; (ii) Guarantor hereby waives and postpones any right to proceed against Rotate Black or any other Person, now or hereafter, for contribution, indemnity, reimbursement, or any other suretyship rights and claims (irrespective of whether direct or indirect, liquidated or contingent), with respect to the Guaranteed Obligations; and (iii) Guarantor also hereby waives and postpones any right to proceed or to seek recourse against or with respect to any property or asset of Rotate Black.

(e)    Without limiting the generality of any other waiver or other provision set forth in this Guaranty, Guarantor hereby agrees as follows:

(i) The Chapter 11 Trustee's right to enforce this Guaranty is absolute and is not contingent upon the genuineness, validity or enforceability of the Note. Subject to paragraph 1 of this Guaranty, Guarantor agrees that the Chapter 11 Trustee's rights under this Guaranty shall be enforceable even if Rotate Black had no liability at the time of execution of the Note or later ceases to be liable.

(ii) Guarantor agrees that, notwithstanding the modification or discharge of the obligations of Rotate Black under the Note as a result of an insolvency proceeding involving Rotate Black, the Chapter 11 Trustee's rights under this Guaranty will remain enforceable even if the amount of the Guaranteed Obligations results in Guarantor having liability for a larger and more burdensome amount than that for which Rotate Black is responsible. The enforceability of this Guaranty against Guarantor shall continue until all sums due under the Note has been paid in full and shall not be limited or affected in any way by any disability or other defense of Rotate Black or any other person in connection with the Note.

(iii) Guarantor waives the right to require the Chapter 11 Trustee to (A) proceed against Rotate Black or any other Person in connection with the Guaranteed Obligations, (B) proceed against or exhaust any other security or collateral the Chapter 11 Trustee may hold, or (C) pursue any other right or remedy for Guarantor's benefit, and agrees that the Chapter 11 Trustee may exercise its right under this Guaranty without taking any action against Rotate Black, or any other Person in connection with the Guaranteed Obligations, and without proceeding against or exhausting any security or collateral the Chapter 11 Trustee holds.

6.    Releases.  Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing the obligations of Guarantor hereunder, the Chapter 11 Trustee may, by action or inaction, compromise or settle, extend the period of duration or the

time for the payment, or discharge the performance of, or may refuse to, or otherwise not enforce, or may, by action or inaction, release all or any one or more parties to, any one or more of the terms and provisions of the Note or may grant other indulgences to Rotate Black in respect thereof, or may amend or modify in any manner and at any time (or from time to time) the Note.

7. <u>No Election</u>. The Chapter 11 Trustee shall have the right to seek recourse against Guarantor to the fullest extent provided for herein and no election by the Chapter 11 Trustee to proceed in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of the Chapter 11 Trustee's right to proceed in any other form of action or proceeding or against other parties unless the Chapter 11 Trustee has expressly waived such right in writing. Specifically, but without limiting the generality of the foregoing, no action or proceeding by the Chapter 11 Trustee under any document or instrument evidencing the Obligations, including but not limited to the Guaranteed Obligations, shall serve to diminish the liability of Guarantor under this Guaranty.

8. <u>Revival and Reinstatement</u>. If the incurrence or payment of the Guaranteed Obligations or the obligations of Guarantor under this Guaranty by such Guarantor or the transfer by Guarantor to the Chapter 11 Trustee of any property of Guarantor should for any reason subsequently be declared to be void or voidable under any state or federal law relating to creditors' rights, including provisions of applicable bankruptcy law relating to fraudulent conveyances, preferences, or other voidable or recoverable payments of money or transfers of property (collectively, a "<u>Voidable Transfer</u>"), and if the Chapter 11 Trustee is required to repay or restore, in whole or in part, any such Voidable Transfer, or elects to do so upon the reasonable advice of its counsel, then, as to any such Voidable Transfer, or the amount thereof that the Chapter 11 Trustee is required or elects to repay or restore, and as to all reasonable costs, expenses, and attorneys' fees of the Chapter 11 Trustee related thereto, the liability of Guarantor automatically shall be revived, reinstated, and restored and shall exist as though such Voidable Transfer had never been made.

9. <u>Financial Condition of Rotate Black</u>. Guarantor represents and warrants to the Chapter 11 Trustee that he is currently informed of the financial condition of Rotate Black and of all other circumstances which a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Guaranteed Obligations. Guarantor further represents and warrants to the Chapter 11 Trustee that he has read and understands the terms and conditions of the Note and of the Asset Purchase Agreement. Guarantor hereby covenants that he will continue to keep himself informed of Rotate Black's financial condition and of all other circumstances which bear upon the risk of nonpayment of the Guaranteed Obligations.

10. <u>Payments; Application</u>. All payments to be made hereunder by Guarantor shall be made in United States Dollars, in immediately available funds, and without deduction (whether for taxes or otherwise) or offset.

11. <u>Attorneys' Fees and Costs</u>. Guarantor agrees to pay, on demand, all reasonable attorneys' fees and all other costs and expenses that may be incurred by the Chapter 11 Trustee in connection with the enforcement of this Guaranty or in any way arising out of, or consequential to, the protection, assertion, or enforcement of the Guaranteed Obligations, irrespective of whether suit is brought.

<u>UNCONDITIONAL GUARANTY</u> – **Page 4**

12.    Cumulative Remedies.  No remedy under this Guaranty or under the Note is intended to be exclusive of any other remedy, but each and every remedy shall be cumulative and in addition to any and every other remedy given under this Guaranty or the Note, and those provided by law.  No delay or omission by the Chapter 11 Trustee to exercise any right under this Guaranty shall impair any such right nor be construed to be a waiver thereof.  No failure on the part of the Chapter 11 Trustee to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver thereof; nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise thereof or the exercise of any other right.

13.    Severability of Provisions.  Each provision of this Guaranty shall be severable from every other provision of this Guaranty for the purpose of determining the legal enforceability of any specific provision.

14.    Entire Agreement; Amendments.  This Guaranty constitutes the entire agreement between Guarantor and the Chapter 11 Trustee pertaining to the subject matter contained herein.  This Guaranty may not be altered, amended, or modified, nor may any provision hereof be waived or noncompliance therewith consented to, except by means of a writing executed by Guarantor and the Chapter 11 Trustee.  Any such alteration, amendment, modification, waiver, or consent shall be effective only to the extent specified therein and for the specific purpose for which given.  No course of dealing and no delay or waiver of any right or default under this Guaranty shall be deemed a waiver of any other, similar or dissimilar, right or default or otherwise prejudice the rights and remedies hereunder.

15.    Successors and Assigns.  This Guaranty shall be binding upon Guarantor and their successors and assigns and shall inure to the benefit of the successors and assigns of the Chapter 11 Trustee; provided, however, Guarantor shall not assign this Guaranty or delegate any of its duties hereunder without the Chapter 11 Trustee's prior written consent and any unconsented to assignment shall be absolutely void.  In the event of any assignment or other transfer of rights by the Chapter 11 Trustee, the rights and benefits herein conferred upon the Chapter 11 Trustee shall automatically extend to and be vested in such assignee or other transferee.

16.    No Third Party Beneficiary.  This Guaranty is solely for the benefit of the Chapter 11 Trustee, and each of its successors and assigns and may not be relied on by any other Person.

17.    Choice Of Law And Venue; Jury Trial Waiver.

THE VALIDITY OF THIS GUARANTY, THE CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT HEREOF, AND THE RIGHTS OF THE PARTIES HERETO WITH RESPECT TO ALL MATTERS ARISING HEREUNDER OR RELATED HERETO SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA.

THE PARTIES AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS GUARANTY SHALL BE TRIED AND LITIGATED ONLY IN THE BANKRUPTCY COURT. GUARANTOR AND CHAPTER 11 TRUSTEE EACH WAIVE, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT EACH MAY HAVE TO ASSERT THE DOCTRINE OF FORUM

NON CONVENIENS OR TO OBJECT TO VENUE TO THE EXTENT ANY
PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION 17.

GUARANTOR AND CHAPTER 11 TRUSTEE EACH HEREBY WAIVE
THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF
ACTION BASED UPON OR ARISING OUT OF THIS GUARANTY OR ANY OF THE
TRANSACTIONS CONTEMPLATED HEREIN, INCLUDING CONTRACT CLAIMS,
TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW
OR STATUTORY CLAIMS.   GUARANTOR AND CHAPTER 11 TRUSTEE
REPRESENT THAT EACH HAS REVIEWED THIS WAIVER AND EACH
KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS
FOLLOWING CONSULTATION WITH LEGAL COUNSEL.   IN THE EVENT OF
LITIGATION, A COPY OF THIS GUARANTY MAY BE FILED AS A WRITTEN
CONSENT TO A TRIAL BY THE COURT.

20.    Counterparts; Telefacsimile Execution.  This Guaranty may be executed in any
number of counterparts and by different parties on separate counterparts, each of which, when
executed and delivered, shall be deemed to be an original, and all of which, when taken together,
shall constitute but one and the same Guaranty.  Delivery of an executed counterpart of this
Guaranty by telefacsimile shall be equally as effective as delivery of an original executed
counterpart of this Guaranty.  Any party delivering an executed counterpart of this Guaranty by
telefacsimile also shall deliver an original executed counterpart of this Guaranty but the failure to
deliver an original executed counterpart shall not affect the validity, enforceability, and binding
effect of this Guaranty.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Guaranty as of the
date first written above.

By: _____
Name:    John Paulsen
Personal Address: _____
_____

Driver's License #: _____
State of Issuance: _____

UNCONDITIONAL GUARANTY – Page 6

STATE OF _MICHIGAN_ )
                       ) ss.
COUNTY OF _EMMET_     )

    The foregoing instrument was acknowledged before me this 2ND day of ~~January~~, February 2010, by _JOHN PAULSON_. He/~~She~~ is personally known to me ~~or has produced a State of driver's license as identification~~.

Sign Name: _____

Print Name: _JOHN R. TURNER_

NOTARY PUBLIC, CHARLEVOIX COUNTY,
MICHIGAN, ACTING IN EMMET COUNTY.

NOTARY PUBLIC

My Commission Expires:
JULY 15, 2011

Serial No. (none, if blank): _____

[NOTARY SEAL]